182382 Apple Inc. v. Andrea Electronics Corporation future minimum value future minimum value current magnitude value current magnitude value current magnitude value current magnitude value that's what's designated Y per N. You'll see in the bottom middle left side you'll see a line of logic going down where it's referring to the future minimum. And you see in items 7.10 and 7.16 the processing. Those are events that are occurring not at a regular interval. Those are events that are being driven for each data sample being evaluated. So right there it's showing that that value, future minimum, is being set not at a regular interval but from time to time, whenever the data condition is met. Then at the bottom of that figure it takes a dog leg over to the left and the future minimum gets set at the five second interval again. That's what's referred to as the initiating of the value. So right within this figure 7 are two ways of the value of the future minimum being set to a current magnitude as Claim 9 is envisioning. One from time to time and the other one at a regular interval. And so that's why in our construction for periodically we said that's the meaning, we're doing it periodically and it matches exactly what the claims specify. But what about the column 8, line 36, where it says the future and current minimum values are calculated continuously and initiated periodically, for example, every five seconds as determined in step 7.24. That seems to contemplate that periodically means at regular intervals. I think in all fairness it would contemplate doing it both. So the continuous calculation, the continuous setting that's being illustrated in figure 9, or in figure 7, is showing that the values are going to change whenever the data conditions are true. Is the value lower than the one that's been stored? That's a continuous operation as it's laid out in figure 7. And then the initiation is the thing that occurs at the end of that block of time. For example, five seconds. But I think it's also fair to look at the patent as a whole because when you're engaging this question of what periodically means, you have to evaluate how it's periodically used in the patent specification as a whole and what construction accommodates all the different ways it can be understood. And that's where when you look at the illustration in figure 7 and all the other ways these values are shown being updated, it compels the finding that it's the broader meaning that it can occur from time to time or at a regular interval. Now again, as I said, this issue, if you find that it is as we've described, it compels a reversal because there's no dispute about the patentability question under that broader construction. Just briefly, the last issue on a flag is also related to the 627 proceeding. And here, this is an issue that if you don't find for us on periodically, we do believe that this would also justify a remand on the 627 proceeding. What we said in our petition was that a skilled person would have found it obvious to adapt a part of the health system. This is a different reference. That aspect is called the running estimator. And what we said in the petition was it would have been obvious to adjust that running estimator to set the noise floor at regular intervals based on the guidance in Martin. We didn't say that you should change when you should use that type of estimator. We said when it's running as the running estimator, you just adjust how that running estimator works. In this response, Andrea came back in the proceeding and argued that essentially another straw man argument. It said that it's Apple's position that we should call for changing to the preconditions that would dictate whether you use the running estimator or the stationary estimator. And that was not Apple's position. But then when you look in the board decision on the 627 proceeding, it actually embraces that argument from Andrea. Going back to periodically for a minute, did you make that figure seven argument walk through figure seven like that in your brief? I just don't recall seeing it. In our brief, we did address the figure seven issue. I would have to double check that. Maybe I can respond to that in our rebuttal. Okay. We'll give you two minutes. Thank you very much. Mr. Bellinger. Thank you. May it please the Court, William Bellinger on behalf of Andrea. I want to start my argument in reverse order, starting with the periodic argument that you just heard. And I'd like to point out what I think is a key deficiency in what counsel just directed you to with respect to figure seven. So he's correct that in Claim 9, patentees chose the word periodic to describe circumstances where the future minimum value is set to the current magnitude value periodically. If you look just earlier to Claim 8, it says where the current minimum value is replaced with the current magnitude value, where so current minimum value is greater than said current magnitude value. And that's, I guess, consistent with the discussion in Column 8, lines 38 through 40, where it's said to be different, calculating continuously versus initiating periodically. Exactly. So one example the patentee gives is if one value is greater than another, you replace them. The other example they give is you replace them at a fixed period of time. Both experts agree in the context of this patent, periodically means a fixed interval of time. So there's no dispute that the construction that the board adopted was one that was supported by both Apple's expert and Andre's expert. But it does say, for example. The intrinsic record says, for example, five seconds. As the board found correctly, there was a dispute whether the example was five seconds, or six seconds, or ten seconds, or whether the example was a fixed period of time, or from time to time. There's no evidence in the record that the, for example, meant from time to time. The example counsel gave is an alternate method, which is not a periodic update. The example doesn't preclude from time to time, does it? I would respectfully, I would say, the example as understood by a person with an ordinary skill in the art would preclude from time to time. Because they gave one example of an update from time to time. They described that as doing the update greater than. And then they gave another example. The only example that they called the periodic update was every five seconds. The exemplary portion of that was the time. Obviously, doing it every five seconds wasn't limiting. It could be six seconds or ten seconds. What about figure seven? Yes, Your Honor. So in figure seven, as I noted, there are two types of updates. If you look at box 712 or 710, those are doing a comparison. So Y sub N, that is the measured magnitude value, or the current magnitude value of the claims. And it's determining whether the future minimum is greater than that. So that's one type of update. You're doing a comparison to see whether one value is greater than another. And that's either yes or no. You go down to 724, that's described by the patentee as being a periodic example. He points to 710 and 714. Yes, Your Honor. So if you follow the logic in 710, that's done consistent with claims 7 and 8, when one value is greater than another value. The only update that's done from time to time, excuse me, at a fixed interval of time is 724 did five seconds lapse. So there's one example that's a periodic update every five seconds. That's what the patentee described as periodic. There's another example where it's done based on a comparison of whether one value is greater than another. And I would direct you to the board's decision. This is in Appendix 32 and 33. They started as is proper. I'm sorry, what was that? Appendix 32 and 33. Thank you. This is where the board evaluated the claim construction issue. They properly started with the intrinsic record, and then they looked to the extrinsic record, including the dictionary definition that Apple places primary reliance on, as well as the testimony of both experts. And as is well established in this board's precedent, general dictionary definitions are not binding. The question is what would one of ordinary skill in the art understand? Both Apple's expert and Andre's expert agreed that in this context, signal processing, that general dictionary definition did not apply. The proper definition was a fixed interval of time. Are you going to turn to the other issue, the question of whether it's rebuttal or a new argument? Yes, Your Honor. I wanted to ask you one question about that, which is just that did you argue that this was a new argument? Before the board came to that conclusion? The board actually came to that conclusion on their own at the oral hearing, and then it was discussed at the oral hearing. And I apologize, but just so I don't lose this, counsel suggested there's some admission that the prior art anticipates if you reverse-claim construction. That's actually not correct. The board evaluated anticipation, found a difference between the reference based on their construction, and so didn't reach Andre's other distinctions between the reference and claim six, seven, and nine. So that's just a subtlety. I think the board's construction was correct, and if you affirmed the construction, you would affirm the finding of no anticipation. But I think it's incorrect. Counsel suggested that there's an admission of anticipation, even if you reverse. And you had no response on the issue. You did argue the obviousness question where W equals four, right? Yes, and just to point out why I think the board is correct, twofold. One, counsel suggested that this is a de novo review as to whether it's a new argument. Respectfully disagree. All of this court's precedent suggests that you review that for an abuse of discretion. Well, why isn't it appropriate for them to file a reply responding to your argument that you made in the patent owner response? It's certainly permitted by the board's rules to file a reply responding to our argument, so long as they're advancing the same theory of compatibility that was advanced in the petition. And respectfully, the board evaluated it. Well, why did you address it in the response if you didn't think that the petition raised this issue? We addressed in our response the argument made in the petition. And so just to clarify, if you go to, again, looking at the board's decision on this issue, this is appendix pages 13 to 15, the exchange was as follows. The Apple in the petition chose to modify or, as counsel mentioned, simplify the algorithm in the prior art to try to make it fit into an obviousness analysis. As the board properly found, the entire purpose of the Martin reference was to determine whether a signal was increasing quickly or not. And as the board found, and as Apple's expert admitted, you can't figure out whether a signal is increasing rapidly or monotonically as the description is without having at least two samples. So as the board found and as our expert critiqued their obviousness analysis, it was an improper modification and combination of the two references to assume you would start with a reference that was focused on determining whether a signal was increasing rapidly. Assume that you would take only a single sample. Therefore, that's the W equals one. So you'd be unable to tell whether the signal was increasing rapidly or not and then import that algorithm into the base reference, the health reference. Why is that important? Okay, but so what you're saying is that it's a bad example, but that it is listed in the petition as illustrative, as an example, right? And respectfully, no. It's listed in the petition as the requisite element-by-element analysis comparing the references to the claims. So in their petition, they chose an element-by-element analysis which depended on this proposed modification of one reference substitution into the other reference. We argued and the board agreed with this. They disagree with you on that, right? They disagree with you on that. They say that at page A130, it's Dr. Hochwald illustrates Martin's algorithm with the following example, and then they take the position that it was not limited to W equal one later in what would probably be termed more of a claim chart analysis when they go claim-by-claim and explain why the prior discloses each of the claim limitations, right? And I think the board found, and they correctly found, that that claim-by-claim analysis did only assume that W equaled one. So that's in the board's decision in the appendix 14. Let me ask you something else. I mean, we have case law. Do you agree with our case law that says an IRPR may introduce new evidence after the petition stage if the evidence is a legitimate reply to evidence introduced by the patent owner? You agree with that, right? Yes. Your position is that you don't think it's a legitimate reply. Correct. Because we believe the board properly found it was advancing a new and different theory of unpatability, just as this court has also found in the Intelligent Biosystems case, in the UROSA case, and recently in the Frymaster case. It's new because you think when they set W equal to one, that they were saying it's only in this circumstance that this reference renders these claims obvious. Correct. That was the only detailed analysis they gave. They gave a detailed element-by-element analysis where they assumed that W equals one, and that's how they compared it. But they do say it's for purposes of simplicity, don't they? Maybe it's in the expert's declaration. Correct. Just trying to understand, when somebody uses an example, when will they be stuck to it when they say it's illustrated? When that's the only example that they compare element-by-element. So in other words, when somebody uses an example to compare element-by-element, they better sure be careful and make sure they include more examples. If they want to rely on a different example, a different portion of reference as their element-by-element analysis. Why is it a different portion of the reference? Because instead of assuming that you effectively remove that portion of the algorithm, you resolve it. It's not a different column and line number of the reference, right? It's a completely different reading of the reference. In your view, it would be a different embodiment depending on how you set W. Yes, and why that's important, just simply, Your Honor, is if you assume away, if W equals 1, the entire window, there's only one sub-window. If this was so clear, how come you didn't raise it? Excuse me, Your Honor? If this was so clear that this was a new argument, how come you didn't raise it? So, and I think you're reviewing the correctness of the board's decision. Speak up a little, please. Sure, we're reviewing the correctness of the board's decision. No, no, but that doesn't answer my question. If it's so clear that this was a new argument in the reply, why didn't you argue that and only make the argument after the board raised it? So, that's just the basic, so the process is we put in a patent owner's response. Our next opportunity to address the issue was at the oral hearing. We could have moved to strike the reply. There are plenty of opportunities. You had to say that it was a new argument. You didn't say it until the board said it, right? And respectfully, the flow of the argument was petitioner went first, and so petitioner was making his argument. The administrative judge addressed this. We had proposed demonstratives, which made this argument, but there's not a separate briefing schedule. We got the patent owner's response. They put in the reply. We went to oral hearing. The rules didn't provide for a surreply. They do now, but at the time— I believe they did provide for a motion to strike, but they also provided the opportunity at the oral hearing. It was just the sequence was petitioner went first, we went second, and the judge raised this issue first. But back to what I think is the core of the issue, it's unquestionable if you look at the board's decision. They did actually evaluate the argument made in the petition, so they give a detailed analysis. This is on appendix pages 13 through 15, where they say they consider Dr. Hochwald's declaration, they consider the petition, and they consider the detailed element-by-element analysis contained in the petition. They credited the testimony of Dr. Douglas over the testimony of Dr. Hochwald for this proposed combination. Can you tell me where you're reading from? How is that, page 14? Appendix page 14 to 15. Their conclusion at the top of the first carryover paragraph at the top of page appendix 15, they say petitioner fails to provide persuasive reasoning as to why one skilled in the art would have modified Hirsch's teaching in a manner that is contrary to the express disclosure mark. That was worth W limited to one, right? That was given what was presented in the petition. Got it. I think that's really the fundamental question. If there were multiple, if petitioner is correct, that they clearly articulated in their petition, multiple examples, W equals one was one example, but they had others, it's clear that the board gave them the opportunity to explain that and evaluate that. So the board evaluated the entire petition, the rationale given by their expert, and concluded that they hadn't met the standard of showing unpatentability. So the question is, do they get another chance to come up with a new theory of unpatentability in the reply? The board did consider the portions of the reply that supported the original theory in the petition. What the board said they would not consider is what they deemed a new theory, changing the way the reference was being read and changing the proposed modification. And keep in mind, this is an obviousness combination. This isn't a question of anticipation. And so they were proposing to modify these two references to meet the claim. And so the proposed modification... Why do you think it makes a difference? I was following you until you said, keep in mind, this is obviousness and not anticipation. Why should it matter? Because why it should matter is they proposed a way to modify the references in their petition. Essentially, what they're arguing now is they should get a chance in reply to propose a different way to modify the references. Even if it was anticipation, under your theory, it would be new because there would be a different way to read the reference to anticipate the claims, right? I don't see the difference. That's what I'm trying to... Unless you have some other reason to add. I mean, maybe I'm missing something still. Sure. I think it's a matter of they looked at the two references that were proposed to be combined. They looked at the rationale provided in the petition. And they concluded that there was additional material not contemplated by the patent office's rules in the reply. That's what they didn't consider. But it's clear from the record, they did consider the entirety of the petition. And that's what the rules provided, that Apple had to give their basis in the petition. What about the fact that the APA says that the board has an obligation to consider rebuttal argument? If it's merely rebuttal as opposed to raising new issues. And so that, respectfully, that's the standard review, is you look, was there a rational basis to conclude this was new? Submitted, there was, and therefore you should affirm. Okay. Thank you, Mr. Belman. Thank you. Mr. Cushing. I'll try to be efficient here. I just want to touch on a few of the things we've heard. First, just to the site in our brief, it's at page 51 to 53 of our opening brief where we discuss Claim 9 and include the discussion, and there's a reference to Figure 7's operation. Second issue I heard him mention was that both experts agree about the meaning of reasonable or periodically. And I think that's actually a disputed issue. The testimony that they were relying on involves our expert saying in response to a deposition question, what is the meaning of periodically? And he says, well, outside the context of the patent, and then he says inside the context of the patent, and he goes into a discussion. The bottom line on this testimony is it's extrinsic evidence. And if you find, as we've explained, that the intrinsic evidence compels a meaning of periodically, this isn't going to change that. You can't have contrary expert testimony override what the intrinsic evidence demonstrates the meaning of a term is. Next thing I want to mention is that we said that they didn't dispute obviousness or anticipation if you find for our construction periodically. And the basis for that is Appendix 2042-84 and also 2494. They didn't raise a different outcome in the case in their briefs before you whether or not the term periodically changes. And under our construction, there's no argument that they've advanced in this appeal. The question of how you review the new theory of patentability was definitively addressed by this court in Newvasive, and this is at 841 F3rd 966 at 970. It says clearly, whether a ground the board relied on was new, requiring a new opportunity to respond is a question of law subject to de novo review. And then finally, one thing to keep in mind is that the board found a motivation to combine Hirsch with Martin in its decision, and that hasn't been disputed. That's at Appendix 13, which goes to our ultimate point. If you see a motivation to run the Martin algorithm on the Hirsch apparatus, you yield an apparatus which, under Parker vision, renders unpatentable these claims. Okay, thank you for your time. Thank you, counsel.